In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1408

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AUSARIAN CARNEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:23-cr-20029 — **Stephen P. McGlynn**, *Judge.*[*]

ARGUED MAY 19, 2026 — DECIDED AUGUST 4, 2026

Before BRENNAN, *Chief Judge,* and ST. EVE and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* After a joint trial, a jury convicted Ausarian Carney and his sister Ademeko Maclin-Carney of kidnapping local businessman Ed Good. Carney now appeals, contending that his Confrontation Clause rights were violated at trial and that his twenty-four-year sentence is

---

[*] Of the Southern District of Illinois, sitting by designation.

unreasonable. Carney's Confrontation Clause objection faces a heavy burden on plain-error review since he failed to raise it below. Carney has not met this burden. He has not shown a constitutional error affecting either his substantial rights or the trial's fundamental fairness. And the district court appropriately considered his principal arguments in mitigation at sentencing. We affirm.

## I. Background

Carney and Maclin-Carney were tried in October 2024 for kidnapping under 18 U.S.C. § 1201(a)(1). At trial, Good testified that in March 2022 he received a call asking for a flooring job estimate at an address in Decatur, Illinois. When he arrived, he met a woman he would later identify as Maclin-Carney. She pepper-sprayed Good, and a man wearing a black ski mask appeared and held him at gunpoint. Good never saw the man's face.

The kidnappers tied up Good, covered his eyes with duct tape, shoved cotton balls in his ears, put a sack on his head, and took him to the basement of another house. They forced him to call his wife, ask for a $400,000 ransom, and tell her not to call police. Good's wife immediately called 911, against Good's instructions, and the kidnappers soon learned that Decatur police had arrived at the Goods' flooring store. Good pled for his life, and the male kidnapper—after arguing upstairs with the female kidnapper—told him, "I think I got a plan to get rid of you." The male kidnapper drove Good away from the house, left him in the backseat of an abandoned minivan, and fled. A few days later, police arrested Maclin-Carney and Carney after seeing them driving a car that resembled the one used in the kidnapping.

At their trial, the government sought to introduce a series of letters Maclin-Carney had written from jail. Maclin-Carney had asked another inmate to smuggle the letters to her family, but law enforcement intercepted them. The letters suggested Maclin-Carney wanted her relatives to corroborate a false alibi for her and her brother. For example, one of the letters said: "Tell my lawyer you dropped me and Sarian off [at] Myra's that night and went to this house 'cause your car was messed up." Another said: "The more witnesses the better. If I go down Sarian go down it's a package deal."

The government argued that the letters were admissible to prove Maclin-Carney's consciousness of guilt. But the district court expressed concern that the references to Carney might unduly prejudice him under Federal Rule of Evidence 403. In response, the government proposed omitting a page from one of the letters containing the statement "If I go down Sarian go down." Carney's counsel did not object or suggest further redactions. The court allowed the rest of the letters to be read into evidence, including multiple other references to Carney. In closing, the government cited the letters as evidence that Maclin-Carney needed an alibi for both herself and Carney.

The jury convicted both Carney siblings of kidnapping. The district court sentenced Maclin-Carney to thirty years' imprisonment, and Carney to twenty-four. Carney appeals.

## II. Discussion

We begin by addressing Carney's Confrontation Clause challenge based on the admission of Maclin-Carney's letters, then turn to his sentencing challenge. Finding neither meritorious, we affirm.

### A. The Letters' Admission

While Carney's appeal focuses on Confrontation Clause issues with Maclin-Carney's letters, we note at the outset that the district court correctly identified another basis for their exclusion: Rule 403. *See United States v. Norwood*, 982 F.3d 1032, 1042–43 (7th Cir. 2020) (evaluating parallel Confrontation Clause and Rule 403 challenges to the same evidence). The letters' probative value as to Carney was questionable: Their references to him were oblique, and there is no evidence he was involved in writing them. And the risk that the letters might unduly bias the jury against Carney was obvious—so much so that the district court properly raised the issue *sua sponte* and ultimately mitigated this risk by omitting one of the prejudicial statements in the letters.

Carney himself, however, has never pressed a Rule 403 argument—either below or on appeal. He never objected to the government's proposed redactions or its references to the letters in closing, and his briefs on appeal do not even reference 403. "We cannot make a party's arguments for him, or force him to make arguments he seems determined not to raise." *United States v. Foster*, 577 F.3d 813, 816 (7th Cir. 2009). Similarly, while Carney makes a late-breaking argument in his reply brief on appeal that the statements in the letters—separate from any Confrontation Clause issue—were also inadmissible hearsay, this is too little too late: "Arguments raised for the first time in a reply brief are waived." *United States v. Waldrip*, 859 F.3d 446, 450 n.2 (7th Cir. 2017).

Carney's Confrontation Clause objection, too, comes close to outright waiver. He failed to raise it before the district court, and it is hard to see why that omission should not be construed as a "tactical decision to forgo cross-examination."

*United States v. Fenner*, 142 F.4th 510, 524 (7th Cir. 2025) (cleaned up). But because the government argues only that this objection is forfeited, we may review it for plain error. *Id.* at 525 n.7 (the government may "waive[] its waiver argument").

For Carney to prevail under the "difficult" plain-error standard: "(1) there must be an error; (2) the error must be plain; and (3) the error must affect substantial rights, which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Page*, 123 F.4th 851, 864 (7th Cir. 2024) (*en banc*) (cleaned up). And even if these first three elements are met, we will not reverse unless (4) the error seriously affected "the fairness, integrity or public reputation of judicial proceedings." *Id.*

Carney argues admitting the letters violated his Sixth Amendment right to confront adverse witnesses under *Bruton v. United States*, 391 U.S. 123 (1968). In *Bruton*, the Supreme Court held that the Confrontation Clause bars using a non-testifying defendant's inculpatory out-of-court statement against a codefendant at a joint trial, even if the jury is instructed to consider the statement only as evidence against the defendant who made it. *Id.* at 137. Carney contends that admitting the letters flouted *Bruton* because they implied his guilt as well as his sister's. And since Maclin-Carney never testified at trial, he could not cross-examine her on their contents.

In support Carney cites the Sixth Circuit's decision in *Lyle v. Koehler*, which held over forty years ago that admitting a defendant's similar false-alibi letters from jail violated a codefendant's Confrontation Clause rights. 720 F.2d 426, 434 (6th

Cir. 1983). But *Lyle* was decided prior to the Supreme Court's decision in *Crawford v. Washington*, which generally limited the Confrontation Clause to "testimonial" statements intended for use in future prosecutions.[†] 541 U.S. 36, 68 (2004).

We can affirm here on narrow grounds without reaching whether the Sixth Circuit's analysis in *Lyle* remains persuasive today. Even assuming without deciding that there was an error and that the error was plain, Carney could not prevail under the plain-error test's remaining elements. That is, he cannot show that admitting the letters either affected his substantial rights or compromised the trial's fairness or integrity. *See United States v. Garvey*, 688 F.3d 881, 885 (7th Cir. 2012) (affirming solely under element three); *United States v. Maez*, 960 F.3d 949, 966 (7th Cir. 2020) (affirming solely under element four).

Under element three, Carney cannot show a reasonable possibility that admitting the letters affected the outcome of his trial because the other evidence of his guilt "was straightforward and overwhelming." *Garvey*, 688 F.3d at 886. While Good never saw the male kidnapper's face or directly identified him as Carney, the jury heard evidence that Carney's fingerprints had been found on multiple objects recovered at the kidnapping scene and in Good's car, including a roll of duct tape and Good's notebook. When police pulled over Maclin-

---

[†] Our circuit has not yet recognized "that *Bruton* applies only to testimonial statements" post-*Crawford*, though "every one of our sister circuits to consider the issue has so held." *United States v. Hano*, 922 F.3d 1272, 1287 (11th Cir. 2019); *see* 8 Michael H. Graham, *Handbook of Federal Evidence* § 808:7 n.27 (10th ed. Westlaw Nov. 2025 update) (collecting cases). That said, because we resolve this case solely on the latter two elements of the plain-error test, this case is a poor vehicle to stake out our circuit's formal position on this question. We thus do not decide it here.

Carney and Carney a few days after the kidnapping, they found a black ski mask—like the one Good had described the male kidnapper wearing—on the seat next to Carney. And the car the siblings were driving was missing a piece from its front bumper, which matched a piece found in the yard of the house where Good was kidnapped.

Were this not enough, the government also presented cell-phone evidence showing that Carney's phone was using the tower closest to that same house around the time of the kidnapping. Later in the day, the phone moved to the tower near the siblings' residence, where Good believed he had been taken based on prior work he did for Maclin-Carney. Then, shortly after Good's wife called the police, Maclin-Carney's phone called Carney's from near the Goods' store, after which the male kidnapper confronted Good, stating: "I thought I told you to tell [your wife] no police." This mountain of evidence shows beyond any "reasonable possibility" to the contrary that the jury would have found Carney guilty of kidnapping without Maclin-Carney's letters. *Id.* at 885.

Even if Carney could show a plain error affecting his substantial rights, we would still not exercise our discretion to remedy that error under element four of the plain-error test. We do so only "sparingly" and in "exceptional circumstances" where the error "had a serious effect on the fairness, integrity, or public reputation" of the proceeding. *Page*, 123 F.4th at 868 (cleaned up). This is not one of those circumstances: The alleged error here "was born out of counsel's failure to object, not the trial judge's misbehavior." *Fenner*, 142 F.4th at 523; *see United States v. Irby*, 558 F.3d 651, 656 n.4 (7th Cir. 2009) ("We have previously suggested that plain-error review is ill-suited for claimed confrontation-clause violations

when there may have been strategic reasons for a defendant not to object to the admission of testimonial hearsay.").

We thus conclude Carney has not shown the letters' introduction constituted plain error warranting a new trial.

### B. Sentencing

Carney also argues his twenty-four-year sentence (as compared to his sister's thirty-year sentence) was both procedurally and substantively unreasonable. We review claims of procedural error in sentencing *de novo* and claims of substantive error for abuse of discretion. *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012).

The thrust of Carney's asserted procedural error is that the district court gave little or no attention to his key argument in mitigation: that he deserved a lower sentence for his lesser role in the kidnapping plot and ultimate decision to spare Good's life. *See United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007) (noting we will reverse if a district court gives "little or no attention" to a defendant's argument that "was not so weak as not to merit discussion" (citing *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005))). But the record shows the district court considered this argument in depth— and indeed, credited it as the main reason for giving Carney a sentence six years lower than his sister's and slightly below his Guidelines minimum of 292 months. Carney faults the district court for failing to comment on certain facts, but we do not require "artificial thoroughness." *United States v. Tyler*, 139 F.4th 598, 603 (7th Cir. 2025). So long as "the record gives us confidence that the court meaningfully considered the defendant's arguments, even if implicitly and imprecisely," we will affirm. *Id.* (cleaned up).

Carney also argues (without authority) that the district court improperly held his decision not to attend trial against him at sentencing. It was the district court's prerogative, though, to note this fact: not as a strike against Carney, but as a remark on how his absence made it hard to determine his degree of remorse one way or the other. As evidence of his remorse, Carney points to Good's testimony that he had apologized while ripping the duct tape off Good's face. But the district court commented on this same testimony at sentencing as a mark in Carney's favor—and balanced it against countervailing factors like the seriousness of Carney's crime and its impact on the Goods.

Absent any procedural error, our substantive review of the district court's below-Guidelines sentence is limited. Carney may certainly feel the district court did not go far enough in weighing his mitigating factors. But we will not "substitute our sentencing judgment for that of the district court, which heard the evidence and the parties' arguments firsthand and is in the best position to impose an appropriate sentence." *United States v. Hendrix*, 74 F.4th 859, 871 (7th Cir. 2023). The district court's sentence here was not an abuse of discretion.

### III. Conclusion

For the reasons stated, we AFFIRM.